**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § § § § § § § § § | CIVIL ACTION NO. 6:20-cv-342 |
| Plaintiff, | | **JURY TRIAL DEMANDED** |
| v. | | |
| MICROSOFT CORPORATION | | |
| Defendant. | | |

**ORIGINAL COMPLAINT FOR PATENT
INFRINGEMENT**

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this Complaint for Patent Infringement against Microsoft Corporation ("Microsoft" or "Defendant") and alleges:

**NATURE OF THE ACTION**

1. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

**THE PARTIES**

2. Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3. On information and belief, Defendant Microsoft Corporation is incorporated under the laws of Washington State with its principal place of business at 1 Microsoft Way, Redmond, Washington 98052. Microsoft may be served with process through its registered agent Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

4. On information and belief, Microsoft has been registered to do business in the state of Texas under Texas SOS file number 0010404606 since about March 1987.

5. On information and belief, Microsoft has had regular and established places of business in this judicial district since at least 2002.

## JURISDICTION AND VENUE

6. This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

7. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has specific and general personal jurisdiction over Microsoft pursuant to due process and/or the Texas Long Arm Statute, because Microsoft has committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over Microsoft would not offend traditional notions of fair play and substantial justice because Microsoft has established minimum contacts with the forum. For example, on information and belief, Microsoft has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

9. Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b).

10. This district was deemed to be a proper venue for patent cases against Microsoft in actions bearing docket numbers: 6-19-cv-00572 (*Zeroclick, LLC v. Microsoft Corporation*); 6-19-cv-00687 (*Exafer, Ltd. v. Microsoft Corporation.*); and 6-19-cv-00399 (*Neodron Ltd. v. Microsoft Corporation*).

9

11. On information and belief, Microsoft maintains a variety of regular and established business locations in the judicial district including its Corporate Sales Office Locations, Retail Store Locations, and Datacenter Locations.

12. On information and belief, Microsoft operates multiple corporate sales offices in the judicial district, and these offices constitute regular and established places of business.

13. On information and belief, Microsoft employs hundreds of employees within its corporate sales offices located in the judicial district.

14. On information and belief, Microsoft has an established place of business in this judicial district known as "Corporate Sales Office: Austin" located at 10900 Stonelake Boulevard, Suite 225, Austin, Texas 78759 and "Microsoft Retail Store: The Domain" located at 3309 Esperanza Crossing, Suite 104 Austin, Texas 78758.



https://www.microsoft.com/en-us/about/officelocator?Location=78759

15. On information and belief, Microsoft's "Corporate Sales Office: Austin" and "Microsoft Retail Store: The Domain" locations were respectively assessed by the Travis County Appraisal District in 2019 to have market values of over $2.3 million dollars and $2.7 million dollars.



http://propaccess.traviscad.org/clientdb/SearchResults.aspx

16. On information and belief, Microsoft has another established place of business in this judicial district known as "Corporate Sales Office: San Antonio" located at Concord Park II, 401 East Sonterra Boulevard, Suite 300, San Antonio, Texas 78258.



Source: Google Maps

9

17. On information and belief, Microsoft owns and operates multiple datacenters in the judicial district, including without limitation data centers located at 5150 Rogers Road, San Antonio, Texas 78251; 5200 Rogers Road, San Antonio, Texas 78251; 3823 Weisman Boulevard, San Antonio, Texas 78251; and 15000 Lambda Drive, San Antonio, Texas 782245.

18. On information and belief, Microsoft utilizes its datacenter locations in this judicial district as regular and established places of business. As a non-limiting example, the data centers in San Antonio are referred to within Microsoft as "US Gov Texas."

19. On information and belief, thousands of customers who rely on the infringing datacenter infrastructure that Microsoft's engineering and operations teams have built, reside in this judicial district.

## COUNT ONE - INFRINGEMENT OF U.S. PATENT NO. 7,106,727

20. Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

21. On September 12, 2006, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,106,727 ("the '727 Patent"), entitled "Method and Apparatus for Providing Circuit and Packet-Switched Calls on a Network." A true and correct copy of the '727 Patent is attached as Exhibit A to this Complaint.

22. Brazos is the owner of all rights, title, and interest in and to the '727 Patent, including the right to assert all causes of action arising under the '727 Patent and the right to any remedies for the infringement of the '727 Patent.

23. Microsoft makes, uses, sells, offers for sale, imports, and/or distributes in the United States, including within this judicial district, products such as, but not limited to, certain communication platforms, including Microsoft Skype for Business (collectively, the "Accused Products").

24. The Accused Products, including Skype for Business, are enterprise communications platforms developed by Microsoft. They are designed for use with an on-premises Skype for Business Server software and/or as a software as a service version offered as part of Office 365.



https://products.office.com/en-us/skype-for-business/download-app

25. The accused product Microsoft Skype for Business is a unified communications (UC) platform that integrates common channels of business communication and online meetings, including instant messaging (IM), presence, voice over IP (VoIP), voicemail, file transfers, video conferencing, web conferencing, and email.



https://www.skype.com/en/features/

26. Skype for Business can be associated with Microsoft's Enterprise Voice services. Enterprise Voice infrastructure includes mediation servers to translate signaling between internal Enterprise Voice infrastructure and a public switched telephone network (PSTN) gateway, which is circuit-switched, or a Session Initiation Protocol (SIP) trunk, which is packet-switched.

> The Mediation Server translates signaling between your internal Enterprise Voice infrastructure and a public switched telephone network (PSTN) gateway or a Session Initiation Protocol (SIP) trunk. In some deployments, it also translates the media itself between these points.

https://docs.microsoft.com/en-us/SkypeForBusiness/opbuildpdf/sfbs2019toc/toc.pdf?branch=live



https://docs.microsoft.com/en-us/SkypeForBusiness/opbuildpdf/sfbs2019toc/toc.pdf?branch=live

27. The Accused Products configure a wide area network (WAN) link to define resource allocation limits applicable for new audio and video session requests. If there are no resources available, the session is not allowed to start on that link.

> 5. For each bandwidth-constrained WAN link, determine the following:
>
> - Overall bandwidth limit that you want to set for all concurrent audio sessions. If a new audio session will cause this limit to be exceeded, Skype for Business Server does not allow the session to start.
>
> - Bandwidth limit that you want to set for each individual audio session. The default CAC bandwidth limit is 175 kbps, but it can be modified by the administrator.
>
> - Overall bandwidth limit that you want to set for all concurrent video sessions. If a new video session will cause this limit to be exceeded, Skype for Business Server does not allow the session to start.
>
> - Bandwidth limit that you want to set for each individual video session. The default CAC bandwidth limit is 700 kbps, but it can be modified by the administrator.

https://docs.microsoft.com/en-us/SkypeForBusiness/opbuildpdf/sfbs2019toc/toc.pdf?branch=live

28. A Call Admission Control (CAC) feature of the Accused Products verifies whether there is an adequate network bandwidth available to establish a session when a request is received by monitoring real-time audio and video traffic.

> Call admission control (CAC) determines whether there is sufficient network bandwidth to establish a real-time session of acceptable quality. In Skype for Business Server, CAC controls real-time traffic only for audio and video, but it does not affect data traffic. If the default WAN path does not have the required bandwidth, CAC can attempt to route the call through an Internet path or the public switched telephone network (PSTN).

https://docs.microsoft.com/en-us/SkypeForBusiness/opbuildpdf/sfbs2019toc/toc.pdf?branch=live

29. During the analysis of traffic, whenever there are unexpected spikes, Skype for Business Server endpoints modifies as per the fluctuating network condition and allocate more resources for audio and minimal resources for the video.

> - To cope with unexpected spikes in traffic and increased usage over time, Skype for Business Server media endpoints can adapt to varying network conditions and support three times the throughput for audio and video while still maintaining acceptable quality. Do not assume that this adaptability will mask the problem when a network is under-provisioned. In an under-provisioned network, the ability of the Skype for Business Server media endpoints to dynamically deal with varying network conditions (for example, temporary high packet loss) is reduced.

https://docs.microsoft.com/en-us/SkypeForBusiness/opbuildpdf/sfbs2019toc/toc.pdf?branch=live

30. To provide the optimum media quality during a call, the network links allocate throughput of 65 kbps per audio stream and 500 kbps per video stream.

> To provide optimal media quality, do the following:
>
> - Provision the network links to support throughput of 65 kilobits per second (Kbps) per audio stream and 500 Kbps per video stream, if they are enabled, during peak usage periods. A two-way audio or video session uses two streams, so a simple audio/phone connection will require 130Kbps to cover each stream. Video will likewise use 1000 Kbps total to carry an upstream and downstream connection.

https://docs.microsoft.com/en-us/SkypeForBusiness/opbuildpdf/sfbs2019toc/toc.pdf?branch=live

31. Whenever the packet-switched traffic on the Wide Area Network (WAN) path does not have the required bandwidth, CAC in the Accused Products attempts to route the call through an Internet path or through a circuit-switched public switched telephone network (PSTN) path.

> Call admission control (CAC) determines whether there is sufficient network bandwidth to establish a real-time session of acceptable quality. In Skype for Business Server, CAC controls real-time traffic only for audio and video, but it does not affect data traffic. If the default WAN path does not have the required bandwidth, CAC can attempt to route the call through an Internet path or the public switched telephone network (PSTN).

https://docs.microsoft.com/en-us/SkypeForBusiness/opbuildpdf/sfbs2019toc/toc.pdf?branch=live

32. In view of preceding paragraphs, each and every element of at least claim 1 of the '727 Patent is found in the Accused Products.

33. Microsoft has and continues to directly infringe at least one claim of the '727 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

34. Microsoft has received notice and actual or constructive knowledge of the '727 Patent since at least the date of service of this Complaint.

35. Since at least the date of service of this Complaint, through its actions, Microsoft has actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '727 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://products.office.com/en-us/skype-for-business/download-app
- https://www.skype.com/en/features/
- https://docs.microsoft.com/en-us/SkypeForBusiness/opbuildpdf/sfbs2019toc/toc.pdf?branch=live

36. Since at least the date of service of this Complaint, through its actions, Microsoft has contributed to the infringement of the '727 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '727 Patent. The Accused Products are especially made or adapted for infringing the '727 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '727 Patent.

## JURY DEMAND

Brazos hereby demands a jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Brazos respectfully requests that the Court:

(A)     Enter judgment that Microsoft infringes one or more claims of the '727 Patent literally and/or under the doctrine of equivalents;

(B) Enter judgment that Microsoft has induced infringement and continues to induce infringement of one or more claims of the '727 Patent;

(C) Enter judgment that Microsoft has contributed to and continues to contribute to the infringement of one or more claims of the '727 Patent;

(D) Award Brazos damages, to be paid by Microsoft in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Microsoft of the '727 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E) Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F) Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: April 29, 2020                                Respectfully submitted,

*/s/ James L. Etheridge*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296

ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com

**COUNSEL FOR PLAINTIFF**